**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP 11 2006

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

| | | |
|---|---|---|
| KAREN MCCOWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1582-M |
| | § | |
| U.S. PERSONNEL, INC., PHILADELPHIA | § | |
| AMERICAN LIFE INSURANCE | § | |
| COMPANY, HEATHER JOHNSON, MARY | § | |
| HENDRICKSON, and the OCCUPATIONAL | § | |
| INJURY BENEFIT PLAN, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Defendant U.S. Personnel, Inc.'s Motion for Summary Judgment, filed on June 9, 2006, and Defendant Mary Hendrickson's Motion for Summary Judgment, filed on June 15, 2006. Having considered the motions, briefs, and supporting evidentiary submissions of all parties, and for the reasons set forth below, the Court concludes that there are no genuine issues of material fact as to Plaintiff's claims against Defendants and therefore the Defendants are entitled to summary judgment as a matter of law. Accordingly, Defendants' Motions for Summary Judgment should be GRANTED in their entirety.

### Background

Plaintiff Karen McCown ("McCown") was employed as a Payroll Coordinator with U.S.

Personnel, Inc. ("U.S. Personnel") from March 31, 2003 to June 16, 2004.  On July 13, 2005,

McCown filed suit against her former employer in Texas state district court.[1]  U.S. Personnel

removed this action on August 10, 2005, asserting that federal question jurisdiction existed

pursuant to 28 U.S.C. § 1441(b).  McCown filed her First Amended Complaint on February 28,

2006, alleging claims of negligence, gross negligence, intentional infliction of emotional distress,

and denial of benefits under the Family and Medical Leave Act ("FMLA") against U.S.

Personnel, and a claim of intentional infliction of emotional distress against one of U.S.

Personnel's employees, Mary Hendrickson ("Hendrickson").[2]

McCown's negligence and gross negligence claims against U.S. Personnel arose from a

fall McCown suffered at her workplace.[3]  During her employment, McCown worked at the

Metroport Office Building ("Metroport") in Irving, Texas, where U.S. Personnel leased office

space on the second and third floors.[4]  U.S. Personnel was the sole tenant on the third floor of

Metroport, but shared the second floor with other tenants.  An internal emergency exit staircase

ran from the ground floor to the top floor of the ten-story Metroport and was accessible to all of

---

[1] Plaintiff also filed suit against Philadelphia Life Insurance Company.  Plaintiff's claims against Philadelphia Life Insurance Company were dismissed with prejudice by this Court on August 23, 2006, after the parties reached a full compromise and settlement.

[2] Plaintiff also alleged a claim of intentional infliction of emotional distress against another U.S. Personnel employee, Heather Johnson ("Johnson").  Though a summons was issued to Johnson, that summons was never returned as executed against Johnson and Johnson never answered Plaintiff's Complaint.

[3] U.S. Personnel is a non-subscriber to the Texas Worker's Compensation Act.

[4] At the time of McCown's fall, the building was owned by Brookview Partners, L.P. ("Brookview") and managed by Ashwood American Properties, Inc. ("Ashwood").  McCown has not brought claims against Brookview or Ashwood in this case.

the building's tenants.  Since U.S. Personnel was the sole tenant on the third floor, U.S.

Personnel had a security system installed on the exit from the stairwell to its third floor space so

only its employees could gain access to the third floor from the internal stairwell.  On the second

floor, the stairwell opened onto a hallway shared by all of Metroport's second-floor tenants, and

no security system was installed on the exit to the second floor.

On June 16, 2003, about 10:15 a.m., McCown was walking from U.S. Personnel's third-

floor space to its second-floor space to retrieve paperwork, descending on the internal emergency

exit staircase.  McCown slipped while stepping from the platform to the first step and fell to the

bottom of the staircase.  McCown does not remember whether she was holding onto the handrail

when she slipped.  McCown does not remember which foot slipped or whether her foot slipped

on the platform or on the first step.  McCown testified at her deposition that she did not recall

any dangerous condition on the stairwell that caused her to fall.  There were no witnesses to

McCown's fall, though the noise of her fall alerted several employees, who came to help her in

the stairwell.  McCown was taken to the emergency room, where she was treated for her injuries.

McCown's claims for intentional infliction of emotional distress and denial of FMLA

leave arose out of incidents occurring almost a year later.  On the morning of June 11, 2004,

McCown was disciplined by Mary Hendrickson, the Vice President of Human Resource

Services, and Heather Johnson, the Senior Team Leader of McCown's work team.  McCown was

issued a written warning for failing to comply with instructions given by Johnson to assist one of

McCown's coworkers the previous day, and was suspended for the rest of the day and sent home.

On the walk to her car at about 10:00 a.m., McCown experienced a panic attack, marked by

various symptoms including shortness of breath, hot flashes, chest pain, uncontrollable breathing,

and crying.  That day, McCown went to Lake Cities Medical Center for medical treatment, where she was referred to a psychologist for further treatment.

In the weeks leading up to this event, McCown alleges that Hendrickson and Johnson harassed and humiliated her, assigned demeaning work to her, demanded that she perform tasks that were outside of her normal job responsibilities, looked over her shoulder, hovered over her, and listened to her telephone conversations with clients.  McCown describes the demeaning work assignments given to her as filing documents, stacking paper by the copy machine, loading the copy machine with paper, and performing tasks for coworkers that they should have done themselves, such as moving boxes, filing old client files, and putting boxes into archives.

McCown did not report to work the following Monday, June 14, 2004, but faxed to her supervisor a medical absence form signed by John Maxwell, D.O. of Lake Cities Medical Center, stating that McCown was under Dr. Maxwell's care and would continue to be indefinitely. McCown also claims that on June 14, 2004, she faxed a Certification of Physician or Practioner ("Certification") to Hendrickson, constituting a request to take FMLA leave. Although McCown does not submit documentary proof of the facsimile transmission, for purposes of its Motion, U.S. Personnel is not contesting McCown's representation that she faxed the Certification.[5]  On June 16, 2004, U.S. Personnel terminated McCown's employment, citing "lack of work" as the reason for termination.

---

[5] U.S. Personnel has no record of receiving the Certification until June 18, 2004, when it received the Certification by Express Mail delivery.

Summary Judgment Standard

Summary judgment is warranted when the facts and law, as reflected in the pleadings,

affidavits, and other summary judgment evidence show that no reasonable trier of fact could find

for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemarketing Corp.*,

No. 3:01-CV-2764-H, 2004 WL 1283963, *2–3 (N.D. Tex. June 9, 2004) (citing FED. R. CIV. P.

56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986)). "The moving

party bears the initial burden of identifying those portions of the pleadings and discovery in the

record that it believes demonstrate the absence of a genuine issue of material fact, but is not

required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins.

Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322–25). Once the movant

carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is

inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts

that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or

denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). The court

must review all evidence in the record, giving credence to evidence favoring the nonmovant as

well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least

to the extent that evidence comes from disinterested witnesses" and disregarding the evidence

favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson*

5

*Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000).  Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625.  "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.  Further, a party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

<u>Analysis</u>

*I. Negligence Claim*

To prevail on a negligence claim under Texas law, the plaintiff must prove (1) a legal duty owed by the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 466 (5th Cir. 2003) (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998); *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998)).

Apparently arguing that it could only owe McCown a duty under either a negligent activity theory or a premises liability theory of negligence, U.S. Personnel contends that it did not owe McCown a duty under either theory.  "Recovery on a negligent activity theory requires that

6

the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). The parties agree that McCown was alone in the stairwell at the time of her fall and that no contemporaneous activity on the part of U.S. Personnel caused her fall.

Under Texas law, "to prevail on a premises liability claim a plaintiff must prove that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Texas Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999). In this case, the parties agree that U.S. Personnel did not own the staircase where McCown fell, or any of the rest of Metroport for that matter. U.S. Personnel leased its office space from Brookview. The parties also agree that U.S. Personnel did not occupy the staircase, which both parties concede to be a "common" staircase used by all tenants in the building.

McCown maintains, however, that U.S. Personnel controlled the staircase, for purposes of a premises liability theory of negligence, in two ways: "by directing its employees to use the stairwell (to save time and money) in carrying out their daily functions and necessary job duties" and "by placing electronic keys on the inside [sic] the stairwell, so that its employees could enter, exit and commute between the two floors and carryout [sic] their job duties in an efficient manner."[6]  McCown's first example of U.S. Personnel's control of the staircase is not supported by the summary judgment evidence to which McCown directs this Court's attention, and is therefore not considered by the Court. McCown's second example is not sufficient to show that U.S. Personnel exercised control over the stairwell. Plaintiff fails to establish a genuine issue of

---

[6] Plaintiff's Brief in Support of Plaintiff's Response to Defendant U.S. Personnel Inc.'s Motion for Summary Judgment at 11, 12.

material fact that U.S. Personnel had sufficient control over the common stairwell in order to hold U.S. Personnel liable under a premises liability theory.  U.S. Personnel's placement of a security system on the door from the stairwell to its third-floor office space and its granting access to that system only to its employees may evidence its control of its third-floor office space.  McCown, however, has shown no evidence that U.S. Personnel restricted access to the stairwell in a similar way.  In fact, the summary judgment evidence indicates that the opposite is true: none of the tenants in the building controlled or restricted access to the stairwell since it was a common stairwell used by all tenants.

McCown argues, in the alternative, that there is an exception to the general rule requiring that a defendant own, occupy, or control the premises where injury occurred, and that the exception applies in this case.  McCown asserts that U.S. Personnel owed McCown a duty by agreeing "to make safe a known dangerous condition of real property."  *Lefmark Mgmt. Co. v. Old*,  946 S.W.2d 52, 54 (Tex. 1997).  McCown asserts that this duty arose from a lease provision in which U.S. Personnel agreed to comply with all laws "relating to the use, condition, or occupancy of the Premises."  This contractual provision, however, does not apply to the internal stairwell, since "building stairs" are explicitly excluded from the lease's definition of the "Premises."[7]  Additionally, McCown has produced no summary judgment evidence showing that U.S. Personnel had knowledge of a dangerous condition in the stairwell.  Thus, there is no evidence that U.S. Personnel agreed to make safe a known dangerous condition of the property in the internal stairwell and it may not be held liable under this alternative theory.

---

[7] "Premises" is defined in the lease according to "net rentable area."  "Building stairs" are part of Metroport's "service area," which is excluded from the lease's definition of the "useable area," and in turn, from the "net rentable area" of the "Premises."

U.S. Personnel oversimplifies Texas negligence law when it argues that negligence claims by an employee against an employer must be based on either a contemporaneous activity theory or on a premises liability theory. "It is well established that an employer has certain nondelegable and continuous duties to his employees," including "the duty to warn employees as to the hazards of their employment and to supervise their activities, the duty to furnish a reasonably safe place in which to labor and the duty to furnish reasonably safe instrumentalities with which employees are to work." *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 754 (Tex. 1975), *overruled on other grounds by Parker v. Highland Park, Inc.*, 565 S.W.2d 512 (Tex. 1978). As Plaintiff pled in her operative Complaint, U.S. Personnel owed a duty to McCown, as its employee, to provide her with "instructions and training in the workplace; warning or caution of dangerous areas; and safe equipment and instrumentalities to perform her job." It is undisputed that U.S. Personnel's employees, including McCown, would use the common stairwell during the workday when going between U.S. Personnel's office spaces on the second and third floors. Since U.S. Personnel did not have the ability or authority to "control" the stairwell for purposes of premises liability theory, the stairwell is likely not included within U.S. Personnel's "workplace," but the Court will assume that is part of U.S. Personnel's workplace for purposes this order and U.S. Personnel's duty to provide its employees with a reasonably safe place to work.

Having determined that U.S. Personnel owed McCown a duty to furnish a reasonably safe place in which to work, the Court next turns to the second element of a negligence claim: whether U.S. Personnel breached its duty to McCown. Evidence of non-compliance with regulations issued by the Occupational Safety and Health Administration ("OSHA") are

9

admissible as evidence of an employer's negligence. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 581 (5th Cir. 1985). The parties' experts disagree as to whether the stairwell in question complied with an OSHA regulation requiring that "[w]here doors or gates open directly on a stairway, a platform shall be provided, and the swing of the door shall not reduce the effective width to less than 20 inches." 29 C.F.R. § 1910.23(a)(10). McCown attaches as summary judgment evidence a report prepared by her retained expert, David A. David, Sr., which states that the platform at the top of the stairs on the third-floor landing did not comply with the regulation, since the platform was only 45 inches wide from the door to the edge of the platform and that the door was 36 inches wide, resulting in an effective width of less than 20 inches when the door was fully open.[8]  U.S. Personnel counters with deposition testimony from its retained expert, James Knorpp, stating that the platform was OSHA-compliant, since the platform was 100 inches across, leaving 50 inches of space for a person to stand to the right of the door when the door was open. These differing expert opinions on the interpretation of this OSHA regulation would create a fact issue for a jury to decide on whether the platform's width violated the applicable OSHA regulation, 29 C.F.R. § 1910.23(a)(10).

Even given this fact issue regarding whether the stairwell was OSHA-compliant, however, McCown has still not shown that a fact issue exists regarding U.S. Personnel's breach of its duty to provide a safe workplace. The affidavits of Neal England and Grady "Buddy" Jordan, Jr. establish that the owner and manager of the property had the exclusive right and

---

[8] The Court overrules U.S. Personnel's motion to strike Exhibits B, C, and D to the Affidavit of David A. David, Sr. as unsworn copies. Since Mr. David incorporated these exhibits by reference into his sworn affidavit, these exhibits comply with Federal Rule of Civil Procedure 56(e). *Feltner v. Partyka*, 945 F. Supp. 1188, 1191 (N.D. Ind. 1996); *Singleton v. City of Newburgh*, 1 F. Supp.2d 306, 314 (S.D.N.Y. 1998).

ability to exercise control over the stairwell, including the right and ability to perform routine maintenance and repairs. McCown produced no summary judgment evidence to contradict these affidavits. Further, McCown has produced no summary judgment evidence to show that U.S. Personnel knew that the stairwell was not OSHA-compliant or otherwise "dangerous" or in need of repair. McCown has therefore failed to produce evidence that proves the existence of a genuine issue of material fact regarding U.S. Personnel's duty to provide "instructions and training in the workplace; warning or caution of dangerous areas; and safe equipment and instrumentalities to perform her job."

Even if McCown were able to show the existence of a fact issue on the question of breach of U.S. Personnel's duty, McCown would still not be able to prevail on her negligence claim since she has not shown that a fact issue exists regarding causation. An employee-plaintiff who establishes that her employer-defendant was negligent by violating an OSHA regulation "must then prove that the violation of the statute or regulation was the proximate cause of [the plaintiff's] harm." *Melerine v. Avondale Shipyards, Inc.*, 659 F.2d 706, 710 (5th Cir. 1981). Summary judgment is also appropriate as to McCown's negligence claim because McCown has failed to prove the existence of a genuine issue of material fact on whether U.S. Personnel's breach of any duty to provide a safe workplace proximately caused her injuries. McCown has not alleged that her fall was caused by a dangerously narrow platform width in the stairwell. In fact, McCown does not remember many details of her fall, including which foot slipped or whether her foot slipped on the platform or on the first step.

For the foregoing reasons, the Court grants summary judgment to U.S. Personnel on McCown's negligence claim.

*II. Statutory Negligence Per Se Claim*

Defendant U.S. Personnel also seeks summary judgment on McCown's statutory negligence per se claim. In her Complaint, McCown alleges that U.S. Personnel violated Section 22.04 of the Texas Penal Code, which provides that a defendant violates the statute if it "intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury."

"'The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent.'" *Wentwood Woodside I, LP v. GMAC Commercial Mortgage Corp.*, 419 F.3d 310, 323 (5th Cir. 2005) (quoting *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998)). U.S. Personnel argues that McCown has failed to show that she is within the class of persons that Texas Penal Code § 22.04 was intended to protect. The statute only addresses injuries to a "child, elderly individual, or disabled individual," and McCown presented no argument or summary judgment evidence in her Response to U.S. Personnel's Motion for Summary Judgment raising a fact issue that she falls into any of those classes of individuals. Because McCown has failed to prove the existence of a genuine issue of material fact, U.S. Personnel's motion for summary judgment on McCown's negligence per se claim is granted.

12

*III. Intentional Infliction of Emotional Distress Claims*

To recover damages for intentional infliction of emotional distress under Texas law, a plaintiff must show that a: (1) defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions caused plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). "[A] claim for intentional infliction of emotional distress will not lie if emotional distress is not the intended or primary consequence of the defendant's conduct." *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). Claims for intentional infliction of emotional distress may not be based on "mere insults, indignities, threats, annoyances, or petty oppressions." *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). "Emotional distress includes all highly unpleasant mental reactions such as fright, horror, grief, disappointment, anger, worry, and despair." *Washington v. Knight*, 887 S.W.2d 211, 216 (Tex. App.—Texarkana 1994, writ denied). "To be recoverable, the distress must be so severe that no reasonable person could be expected to endure it." *Id.*

Ordinary workplace disputes are not sufficiently severe to support relief under this legal theory. In Texas, only the "most unusual of circumstances" gives rise to a claim for intentional infliction of emotional distress in the workplace. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999) (evidence that supervisor physically threatened employees, repeatedly charged at them, and publicly humiliated them supports a claim of intentional infliction of emotional

13

distress); *see also Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 308 (5th Cir. 1989) (proof that employer intentionally framed an innocent employee as a thief will support liability for intentional infliction of emotional distress).

As a matter of law, the events that McCown recounts leading up to her panic attack on June 11, 2004, do not rise to the level of "extreme and outrageous" conduct that would be recoverable under an intentional infliction of emotional distress claim.  Though the Court recognizes that McCown's encounters with Hendrickson and Johnson may have been unpleasant for McCown, these experiences are characteristic of ordinary workplace disputes that Texas courts have routinely held do not provide a basis for an intentional infliction of emotional distress claim.

For the first time in her Responses to U.S. Personnel's and Hendrickson's Motions for Summary Judgment, McCown alleges an additional ground for her intentional infliction of emotional distress claims: that she was the subject of videotaped surveillance allegedly sought by U.S. Personnel and conducted on October 3 and 4, 2003.[9]  As evidentiary support for this allegation, McCown offers (1) her own affidavit, to which she attaches a copy of the private investigator's report; (2) an email communication produced during discovery by Philadelphia Life Insurance Company; and (3) deposition testimony of three U.S. Personnel employees.  The

---

[9] Defendants argue that McCown is limited to the events occurring in May and June of 2004 as evidence supporting her intentional infliction of emotional distress claims.  Though the Court notes that the better practice would certainly have been to include these factual allegations in Plaintiff's First Amended Complaint, the Court will consider the allegations of intentional infliction of emotional distress which are supported by competent summary judgment evidence. *See* FED. R. CIV. P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").

Court finds that McCown has failed to submit competent summary judgment evidence in support of this additional allegation of intentional infliction of emotional distress.

The Court agrees with U.S. Personnel that McCown's affidavit is not proper summary judgment evidence. "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." FED. R. CIV. P. 56(e). "'Unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.'" *Ramon v. Continental Airlines Inc.*, 153 F. App'x 257, 259 (5th Cir. 2005) (quoting *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985)). The statement in McCown's affidavit regarding the surveillance consists entirely of conclusory statements that are not based on personal knowledge.[10] Most of McCown's statements are prefaced by the disclaimer that she "had no knowledge" of the details of the surveillance during her employment with U.S. Personnel, and McCown does not explain if or how she has acquired such personal knowledge.

---

[10] McCown states in her affidavit:

> In addition, during my employment, I had no knowledge that U.S. Personnel hired a third party to conduct an investigation and surveillance of me during my private life away from work, which I have attached as Exhibit A. Furthermore, during my employment, I had no knowledge that U.S. Personnel forwarded this information to my treating physician and requested that I be placed back to work on full duty. My treating physician did not make me aware of U.S. Personnel's actions either. Apparently, he had their interest at heart as well—again to SAVE THE COMPANY MONEY. I suffered severely because I did not get adequate medical treatment. Also, during my employment, I had no knowledge that U.S. Personnel disclosed this information to the reinsurance company responsible for my injury's medical costs. Again, I did not consent to these actions. Again, to SAVE THE COMPANY MONEY. These actions are extreme and outrageous.

The only support that McCown attaches to her affidavit is a copy of the private investigator's report. The report identifies Standard Financial General Adjusters as the client for the investigation and U.S. Personnel as the "insured." The report also includes a written description of the surveillance, which was conducted from about 6:00 a.m. to 1:00 p.m. on Friday, October 3, 2003, and from about 7:00 a.m. to 1:00 p.m. on Saturday, October 4, 2003. The investigator observed McCown taking part in various activities on those two days, including making purchases at a fast food restaurant and a retail store and volunteering at a school carnival. The report also indicates that a video was made of the surveillance, which recorded McCown "walking, entering, operating and exiting a vehicle, carrying items in both hands, pushing a dolly with both hands, pulling a dolly with her right hand, and turning her head." This report, however, does not support the conclusory allegations that McCown makes in her affidavit regarding U.S. Personnel's involvement in or motivation for the surveillance.

The Court also agrees that the e-mail correspondence, dated September 14, 2004, is not competent summary judgment evidence, as it was not properly authenticated. When McCown submitted the correspondence in her Appendices to her Responses to Defendants' Motions for Summary Judgment, McCown did not properly authenticate it pursuant to Federal Rule of Evidence 901. Although McCown's attorney later submitted an affidavit to attempt to authenticate the correspondence, he did so after the deadline for submission of evidence had passed and without seeking the Court's leave to file supplemental evidence, as required by Local Rule 56.7.[11] Thus, this evidence will not be considered.

---

[11] Because the Court determines that the email correspondence has not been properly authenticated, the Court does not reach the issue of whether the correspondence constitutes inadmissible hearsay.

16

The deposition testimony of the U.S. Personnel employees, although otherwise admissible as proper summary judgment evidence, does not support the allegation for which McCown offers the testimony. McCown alleges that U.S. Personnel circulated the surveillance report and/or videotape to her fellow employees. None of the employees deposed, however, testified that they saw the videotape. Only Donna Pedigo, U.S. Personnel's payroll manager, testified that she saw the surveillance report and not the videotape. She testified that the director of risk management sent her the report, attached to an email, to inform her that surveillance was being conducted on one of her subordinates, McCown. This evidence, however, does not show that causing emotional distress was the "intended or primary consequence" of U.S. Personnel's conduct. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999). Therefore, the Pedigo deposition does not support McCown's intentional infliction of emotional distress claim.

Even if McCown supported the allegations regarding the surveillance with proper summary judgment evidence, these allegations would not have been sufficient to create a fact issue supporting her claims for intentional infliction of emotional distress. With regard to her claim against Hendrickson, McCown failed to show that Hendrickson had any involvement in or knowledge of any of the surveillance activities. As for her claim against U.S. Personnel, McCown failed to establish a genuine issue of material fact that any of the surveillance activities constituted "extreme and outrageous" conduct and, if they did, how such conduct caused McCown severe emotional distress. Texas courts have held that employers' investigations of their employees may be part of ordinary workplace disputes. *See, e.g., Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 741 (Tex. 2003) ("An employer must be given some leeway in investigating serious accusations made against its employees."); *Randall's Food Markets, Inc. v.*

*Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) ("Employers act within their legal rights in investigating reasonably credible allegations of dishonesty of their employees."). McCown has offered no evidence that subjecting her to emotional distress, rather than investigating her physical capacity, was "the intended or primary consequence of the defendant's conduct" and has therefore failed to create a fact issue that the investigation could be the basis of an intentional infliction of emotional distress claim. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999).

Videotaped surveillance does not in and of itself, as a matter of law, amount to outrageous conduct which supports a claim for intentional infliction of emotional distress. *See Creel v. I.C.E. & Assocs., Inc.*, 771 N.E.2d 1276, 1282–83 (Ind. App. 2002) (finding that while surveillance videotaping during a church service "may be considered distasteful, . . . as a matter of law that it did not rise to the level of outrage necessary to support a claim for intentional infliction of emotional distress"). Though some courts have found that allegations regarding surveillance may support claims for intentional infliction of emotional distress, the plaintiffs in those cases were aware of the fact that surveillance was being conducted and offered evidence of the emotional distress they suffered as a result of that awareness. *See, e.g., Thompson v. Paul*, 402 F. Supp.2d 1110, 1118 (D. Ariz. 2005) (involving allegations that the defendant "stalked" the plaintiff, "used a racial slur in reference to [plaintiff's] children, trespassed on [plaintiff's] property, terrorized [plaintiff's] children, and hired individuals to assault [plaintiff]"); *Hawkes v. Private Investigation Servs. of Me. and New England, Inc.*, No. CV-98-270, 2000 WL 33721625, *5 (Me. Apr. 4, 2000) (denying summary judgment given evidence that the plaintiff "developed a delusional disorder triggered by the surveillance and that this worsened after he settled his

18

workers compensation claim").   In this case, McCown has admitted that she was not aware that she was subject to any surveillance until more than two years after the fact and has not submitted any evidence that she suffered emotional distress as a result of the surveillance.  Since McCown failed to produce competent summary judgment evidence or present a genuine issue of material fact supporting her claims for intentional infliction of emotional distress, the Court grants U.S. Personnel's and Hendrickson's Motions for Summary Judgment on these claims.

*IV.  FMLA Claim*

U.S. Personnel moves for summary judgment on McCown's claim for violation of the FMLA.  "The FMLA provides two theories of recovery: the entitlement theory, which creates substantive rights for employees eligible for the coverage of the FMLA, and the retaliation theory, which prohibits employers from retaliating against employees who exercise their FMLA rights."  *Richardson v. Monitronics Int'l, Inc.*, No. 3:02-CV-2338-N, 2004 WL 287730, *2 (N.D. Tex. Jan. 27, 2004).  "To present an entitlement claim under the FMLA, a plaintiff must show that (1) she is an eligible employee under the FMLA; (2) defendant is an employer subject to the requirements of the FMLA; (3) plaintiff was entitled to leave under the FMLA; (4) plaintiff gave proper notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her the benefits to which she was entitled under the FMLA."  *Id.*  To establish a prima facie retaliation claim under the FMLA, a plaintiff must show that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA.  *Mauder v. Metro. Transit Auth. of Harris*

*County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

In Plaintiff's First Amended Complaint, McCown alleged that she "properly and timely submitted a request for leave under the Family Medical and [sic] Leave Act ('FMLA') shortly before her termination on June 16, 2004" and that U.S. Personnel "wrongfully denied her right to leave under the FMLA." Based on the plain and specific meaning of McCown's pleading, which tracks the requirements for pleading an FMLA entitlement claim exactly, the Court finds that McCown presented an entitlement claim, rather than a retaliation claim. *Cf. O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1352 (11th Cir. 2000) (finding the district court erred in not considering evidence supporting an FMLA entitlement claim when the plaintiff "asserted some nonspecific violation of the FMLA"). Unlike the claim for intentional infliction of emotional distress, which McCown pled in her operative Complaint and then produced additional facts and evidence in her Response to U.S. Personnel's Motion for Summary Judgment, McCown failed to plead an FMLA retaliation claim at all in her Complaint. Therefore, unlike the Court's consideration of evidence supporting McCown's intentional infliction of emotional distress claim, the Court will disregard any argument or evidence that McCown presents in her Response to U.S. Personnel's Motion for Summary Judgment relating to a retaliation claim under the FMLA. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

Even if the Court had found that McCown had pled a retaliation claim in her Complaint, the Court would still grant summary judgment to U.S. Personnel on McCown's FMLA claim, because McCown has failed to present evidence that U.S. Personnel's termination of her

employment was in retaliation for her request for FMLA leave.  The Fifth Circuit uses a burden-shifting analysis when evaluating FMLA retaliation claims:

> Once the complaining party establishes a prima facie case of deprivation of a substantive right to reinstatement under the FMLA, the burden shifts to the defendant to prove that the plaintiff would have been terminated during the FMLA leave period and is therefore not entitled to restoration of his position. Thereafter, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation.

*Mauder v. Metro. Transit Auth. of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (internal citations omitted).  U.S. Personnel has presented affidavit evidence that it planned to terminate McCown before she submitted her request for FMLA leave as a planned reduction in force.  McCown has produced no summary judgment evidence at all contradicting this evidence or otherwise showing that U.S. Personnel's reduction in force was a pretext for retaliation.  Even if it did consider McCown's arguments regarding an FMLA retaliation claim, the Court would grant summary judgment to U.S. Personnel because McCown has failed to present evidence that her termination was in retaliation for her request for FMLA leave.

McCown has also failed to prove the existence of a genuine issue of material fact on her FMLA entitlement claim.  McCown apparently argues that U.S. Personnel wrongfully denied her right to leave under the FMLA by terminating her employment on June 16, 2004.  But U.S. Personnel retained its right to terminate its at-will employment relationship with McCown, whether McCown requested leave by facsimile transmission on June 14, 2004, as McCown contends, or on June 18, 2004, when U.S. Personnel claims it received McCown's request by mail.  *See* 29 C.F.R. § 825.216 ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed

during the FMLA leave period.").

In an analogous case, a district court in the Southern District of Indiana granted summary judgment to the defendant on the plaintiff's FMLA entitlement claim, holding that "an employer is entitled to dismiss an employee for any lawful reason at any time, whether before, during, or after an employee requests or takes leave pursuant to the FMLA, as long as the employer does not discriminate or retaliate against the employee for requesting or taking such leave." *Serio v. Jojo's Bakery Restaurant*, 102 F. Supp.2d 1044, 1051 (S.D. Ind. 2000).[12] In the *Serio* case, as in this one, the employer terminated the plaintiff's employment shortly after the plaintiff requested FMLA leave, though the undisputed summary evidence showed that the employer had decided to terminate the plaintiff's employment for cause and that the decision was made before the plaintiff requested leave. The *Serio* court held that to require the employer to defer its termination of the plaintiff until after the plaintiff's FMLA leave was complete "would vest [the plaintiff] with greater rights and benefits than he would have enjoyed had he continued working without requesting such leave," in violation of the FMLA. In this case, U.S. Personnel retained the right to terminate McCown as part of its reduction in force, whether the termination occurred before, during, or after McCown requested and took FMLA leave. McCown has failed to produce a genuine issue of material fact that U.S. Personnel denied benefits due to McCown under the FMLA. The Court grants summary judgment to U.S. Personnel on McCown's FMLA

---

[12] One difference between the facts of this case and the facts in the *Serio* case is that the plaintiff in *Serio* "expressly disavow[ed] any claim that Jojo either discriminated or retaliated against him for requesting leave." *Serio*, 102 F. Supp.2d 1044 at 1051. That difference, however, is not dispositive in this case, since the Court finds that McCown pled only an entitlement claim and not a retaliation claim and, even if McCown's pleading included an retaliation claim, McCown has failed to present facts to show the existence of a genuine issue of material fact on that claim.

entitlement claim.

## V.  Gross Negligence and Exemplary Damage Claims

Texas law provides that "gross negligence is relevant only to an assessment of exemplary damages, and recovery of actual damages is a prerequisite to receipt of exemplary damages." *Potharaju v. Jaising Mar., Ltd.*, 193 F. Supp.2d 913, 920 (E.D. Tex. 2002).  Since McCown has failed to prove the existence of a genuine issue of material fact as to any of her claims against Defendants, the Court grants summary judgment to U.S. Personnel and Hendrickson on McCown's claims for gross negligence and exemplary damages.

<u>Conclusion</u>

The Court finds that McCown has failed to demonstrate that a genuine issue of material fact exists as to any of her claims against Defendant U.S. Personnel and Defendant Mary Hendrickson.

Accordingly, Defendants' Motions for Summary Judgment are GRANTED.

**SO ORDERED.**

**DATED:** September \_\_\_\_, 2006.

BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS